# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**GRACE K. HERRON,**
**Claimant Below, Petitioner**

**v.) No. 24-ICA-257**     (WorkForce W. Va. Bd. of Rev., Case No. R-2024-0470)

**UNITED HOSPITAL CENTER, INC.,**
**Employer Below, Respondent**

**and**

**SCOTT A. ADKINS, in his capacity as**
**Acting Commissioner of WorkForce West Virginia,**
**Respondent**

**FILED**
**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Grace K. Herron ("Ms. Herron") appeals the WorkForce West Virginia Board of Review's ("Board") May 10, 2024, decision affirming the Board's Administrative Law Judge's ("ALJ") determination that Ms. Herron was discharged for gross misconduct based on prior written warnings and was therefore disqualified from receiving unemployment benefits. Respondent United Hospital Center, Inc. ("UHC") filed a summary response.[1] WorkForce West Virginia ("WorkForce") did not file a response. Ms. Herron did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Herron was employed as a cook by UHC from September 9, 2019, until her termination on January 23, 2024. Prior to her discharge, UHC issued three progressive written corrective action notices and warnings to Ms. Herron regarding acts of insubordination. On August 9, 2023, UHC issued a Level 1 corrective action notice for an incident where: (1) a customer ordered French toast and Ms. Herron told the customer that she did not have the ingredients; (2) a cafeteria supervisor who overheard the discussion told Ms. Herron that the necessary ingredients were present; and (3) Ms. Herron responded to the supervisor, "you go ahead and make it then," and left her work area. On August 15,

---

[1] Ms. Herron is self-represented. UHC is represented by Brian M. Peterson, Esq.

1

2023, UHC issued a Level 2 corrective action notice where Ms. Herron aggressively approached her department director and loudly discussed the confidential disciplinary history of an employee in the presence of other employees. On January 15, 2024, UHC issued a Level 3 corrective action notice for misconduct including: (1) telling a customer that the cafeteria was out of onion rings when, in fact, it was not and when confronted by a supervisor, Ms. Herron admitted that she simply did not want to stock and prepare the onion rings; (2) calling multiple supervisors (including a supervisor on vacation) requesting permission to work an extra shift after the department director already denied the request; (3) leaving the grill area early to stock products without approval from management, causing other employees to leave their work stations to assist with the lunch rush at the grill; and (4) storing a jacket under the grill despite being informed several times prior that doing so is a violation of UHC policy. Each corrective action notice contained the following warning language:

> The purpose of taking corrective action is to inform you of the seriousness of your violation of the organization's rules, regulations, or failure to fully comply with the organization's performance standards and to provide you the opportunity to resolve the deficiency. Failure to make immediate and sustained improvement or other workplace violations may result in further corrective action, up to and including termination of employment.

Ms. Herron was terminated after she was accused of taking food from the UHC cafeteria without paying for it and then failing to participate in UHC's investigation of the alleged theft. On January 23, 2024, UHC provided a final termination letter to Ms. Herron detailing the reasons for her discharge, the documented acts of insubordination, and the written warnings she received.

On January 29, 2024, Ms. Herron filed an unemployment benefits claim pursuant to the provisions of West Virginia Code §§ 21A-1-1 to 21A-11-1. UHC responded to Ms. Herron's claim and the WorkForce commissioner's claims deputy determined that Ms. Herron was disqualified from benefits because she was discharged for gross misconduct based on prior written warnings of insubordinate conduct. Ms. Herron appealed the deputy's decision.

At the ALJ hearing on Ms. Herron's appeal from the deputy's decision, UHC presented three corrective action notices and undisputed evidence that Ms. Herron received them, which documented various acts of insubordination. Each of the three written warnings notified Ms. Herron that she was subject to discharge if the acts of insubordination continued. The acts of insubordination included: (1) refusing to prepare food for customers; (2) being disrespectful to management; (3) attempting to circumvent instructions from her director; (4) storing personal items under the grill after being instructed not to; and (5) refusing to sign corrective action and warning forms (in violation of UHC policy). UHC presented further evidence that after the written warnings, Ms.

2

Herron was accused of taking food items without paying (theft) and then she refused to cooperate with UHC's investigation into her alleged theft of food items (in violation of UHC policy). At the hearing, Ms. Herron countered with her own testimony that in her four years of working there, she did not receive any corrective actions until after she returned from leave protected by the federal Family and Medical Leave Act ("FMLA"). The corrective actions continued thereafter, and she testified that the timing of the corrective actions, and ultimate discharge, established that UHC retaliated against her for taking FMLA leave. After considering the parties' testimony and the documentary evidence presented, the ALJ determined that Ms. Herron was disqualified from receiving benefits pursuant to West Virginia Code § 21A-6-3(2) (2020) for "gross misconduct based upon prior written warnings."[2]

Ms. Herron appealed the ALJ's decision to the Board, and on May 10, 2024, the Board issued its decision adopting the ALJ's findings and affirming the ALJ's decision in its entirety. Ms. Herron appeals the Board's May 10, 2024, decision.

Our standard of review in appeals from the Board is as follows:

The findings of fact of the Board of Review of [WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

*Taylor v. WorkForce W. Va.*, 249 W. Va. 381, 386, 895 S.E.2d 236, 241 (Ct. App. 2023) (quoting Syl. Pt. 3, *Adkins v. Gatson*, 192 W. Va. 561, 453 S.E.2d 395 (1994)).

On appeal, Ms. Herron asserts that UHC's corrective actions and her ultimate discharge were directly related to her taking FMLA leave. She further asserts that the ALJ and Board ignored evidence that UHC's retaliatory conduct began immediately after she returned from FMLA leave. In effect, Ms. Herron challenges the ALJ's factual finding, as adopted by the Board, that UHC terminated her for insubordination and misconduct after providing her with a prior written warning that threatened potential discharge.

We disagree with Ms. Herron's assertion that the ALJ and Board ignored evidence that the alleged retaliatory conduct began immediately after she returned to work. Based on our review of the hearing transcript, Ms. Herron testified at length about the circumstances surrounding the corrective actions and warnings and about why she believed

---

[2] West Virginia Code § 21A-6-3(2), provides, in pertinent part: "[t]hat for the purpose of this subdivision, the words 'any other gross misconduct' includes, but is not limited to, any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from the act or acts." W. Va. Code § 21A-6-3(2).

UHC retaliated against her for taking FMLA leave. Ms. Herron may not agree with the weight given to her testimony by the ALJ and Board or how her testimony was applied to the law, but she has not shown that her testimony was ignored.

We further disagree with Ms. Herron's assertion that UHC's corrective actions and her ultimate discharge were directly related to her FMLA leave. Except for timing, Ms. Herron did not present any other evidence of retaliatory conduct by UHC. The record clearly shows that UHC's corrective actions began almost immediately after Ms. Herron returned from FMLA leave and continued until she was terminated approximately six months later. However, evidence of proximity in time alone does not necessarily support the inference of a causal connection between Ms. Herron's FMLA leave and the corrective actions and her ultimate discharge. *See, e.g. Ranade v. BT Americas*, *Inc.*, 581 F. App'x 182, 183 (4th Cir. 2014) (per curiam) ("the nearly six-month gap between [Plaintiff's] FMLA leave … and her termination … undermines her claim that the two events are connected."); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (noting that a gap of two months and two weeks undermined the inference of causation in the plaintiff's Title VII retaliation claim).[3] In contrast, UHC presented unrefuted testimony that the corrective actions and Ms. Herron's discharge were based on her insubordination and misconduct, and were unrelated to her FMLA leave. We find that Ms. Herron failed to establish a causal connection between UHC's corrective actions and Ms. Herron's discharge and her FMLA leave.

Therefore, Ms. Herron has not shown that the ALJ's factual finding, as adopted by the Board, that UHC terminated her for insubordination and misconduct after a prior written warning threatening termination was clearly wrong. Accordingly, we defer to the Board's finding.

For the foregoing reasons, we affirm the Board's May 10, 2024, decision that Ms. Herron was disqualified from receiving unemployment benefits for gross misconduct based on prior written warnings.

Affirmed.

**ISSUED:** April 29, 2025

---

[3] While this is an appeal of the Board's administrative decision that Ms. Herron is disqualified from receiving unemployment benefits, rather than a civil FMLA retaliation action, given that Ms. Herron's factual arguments rely on a retaliation theory, we find federal case law on retaliation claims to be instructive.

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White